IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**CARL C. FOSTER,**

      **Plaintiff,**

**v.**
                                                 **Case No. 2:14-cv-24232**

**JUDGE ANN CHARNOCK**, *et al.*

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On August 1, 2014, the plaintiff, Carl C. Foster, filed a Complaint (ECF No. 2) and an Application to Proceed *in forma pauperis* (ECF No. 1).[1] This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

This is one of eight Complaints filed by the plaintiff in this federal court since August of 2014 in which the plaintiff has made repeated attempts to "appeal" or seek collateral review of unfavorable decisions rendered in numerous lawsuits he has filed in the Circuit Court of Kanawha County.[2] The instant Complaint, which is cumbersome and

---

[1] The plaintiff's Application to Proceed Without Prepayment of Fees and Costs was granted on February 23, 2015. (ECF No. 10). On March 25, 2015, the presiding District Judge granted the Motion to Dismiss of Attorney Alex of the Calwell Group, which was filed notwithstanding the fact that service of process had not been ordered on any defendants. (ECF No. 13). This Proposed Findings and Recommendation addresses the sufficiency of the remainder of the plaintiff's Complaint.

[2] The plaintiff has filed at least 13 cases in the Circuit Court of Kanawha County that have been dismissed for lack of merit or procedural deficiencies. The undersigned takes judicial notice of the fact that, on February 3, 2015, the plaintiff had a pre-filing injunction placed against him concerning any further civil cases filed in the Circuit Court of Kanawha County. *See* Court's Exhibit A, attached hereto.

difficult to interpret, names 31 defendants, including all of the circuit judges of Kanawha County, Municipal Judge Ann Charnock, and numerous other individuals or entities that were parties to his prior complaints filed in the Circuit Court of Kanawha County or with the West Virginia Human Rights Commission. For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the Complaint under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted and because it seeks monetary relief from defendants who are immune from such relief.

## STANDARD OF REVIEW

Because the plaintiff is proceeding *pro se*, the court is obliged to construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Rule 8(a) of the Federal Rules of Civil Procedure governs the requirements for stating a proper claim for relief:

> A pleading which sets forth a claim for relief . . . shall contain <u>1) a short and plain statement of the grounds upon which the court's jurisdiction depends</u>, unless the court already has jurisdiction and the claim needs no new grounds for jurisdiction to support it, 2) a short and plain statement of the claim showing that the pleader is entitled to relief, and 3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. P. 8(a) (Emphasis added).

Pursuant to 28 U.S.C. § 1915(e)(2)(B), because the plaintiff is proceeding without prepayment of fees and costs, the court is obliged to screen the case to determine if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory. *Denton v. Hernandez*, 504 U.S. 25 (1992). A "frivolous" claim

2

lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Furthermore, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
> 
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

3

## ANALYSIS

The initial Complaint begins by discussing a number of cases the plaintiff has unsuccessfully filed in the Circuit Court of Kanawha County and with the West Virginia Human Rights Commission. (ECF No. 2 at 1). The Complaint alleges that "in the normal course of preparing for my trials, it has become impossible; not only because of the defendants, but also the actions and words of the secretaries of the Human Rights Commission & the Clerks of Kanawha County Court." (*Id.*) The Complaint further states:

> 2 situations stand out in particular: The secretary of the Human Rights Commission, upon hearing my statement that I could not use a computer when I asked her for a copy of the Human Rights Act practically jumped out of her seat in rebellion from which was clearly a long standing assumption that I could; due to her own statement that she thought I was the type that could easily find that information. Her facial expression and vocal tone made it clear to me that she was resolved to do whatever she could to be a detriment to my cases.
>
> The second situation was a dialogue between two clerks in the Kanawha County Clerk's Office: I was standing at the Clerk's window waiting for the clerk who was filing an amendment I made to my case against Stroebel & Johnson when I heard a conversation between two clerks not handling my forms. One of them must have known about [Judge Tod Kaufman's] order to dismiss granted to Mr. Stroebel because she said I wonder how he's going to take this, do you think I'm getting on his nerves in reply the other said, "You're not supposed to say that (HA HA)" then returning comment the first one said "Oh you're right! Oh he's no lawyer anyway." Totally ambiguous to the fact the you're not supposed to "get on the nerves" of anybody preparing legal representation for a trial.
>
> The judges as well have presented a problem for me as have: the officers at the entrance of Kanawha County Court and the personnel of the Human Rights Commission. These people work in close relationship to other judges and the Commissioners and directors assigned to hear the grievances of the public. They were not at all professional and in some cases were malicious. When I was brought the judge's "Order to Dismiss" shortly after hearing the dialogue between the clerks, the clerk who issued me the order confirmed it with a snarl and after I asked for an appeal form became noticeably frustrated. All of my cases are based in legality any reasonable person would at least like to see how they would stand in trial, but I am afraid that opportunity may not be granted.

(*Id.* at 1-2). The Complaint further asserts that "these individuals and agencies and governments as a whole are communicating within themselves to achieve evil ends . . . I say this because those charged with those precise responsibilities are denying a citizen his day in court using means that to a sensible person are despicable." (*Id.* at 2). The Complaint states that the plaintiff is "suing for violation of constitutional rights, violation of human rights & collusion" and that the plaintiff is seeking $12 million in damages. (*Id.* at 3). The plaintiff then summarily lists the following "unlawful violations":

1. Violation of 1st, 5th & 6th Amendments
2. Denial of equal access
3. Neglect of duties
4. Conducting a witch hunt
5. Violation of RICO law
6. Collusion
7. Discrimination & intolerance pursuant to threatening behavior
8. Reprisal
9. Libel

Beyond the conclusory allegations above, the Complaint does not specify any particular facts to support these "unlawful violations." The plaintiff then attaches, *inter alia*, copies of various complaints and amendments to complaints that he filed in Kanawha County and the dismissal order entered by Judge Kaufman in his case against Stroebel & Johnson. (*Id.* at 4-18).

On December 18, 2014, and January 6, 2015, the plaintiff filed additional documentation in support of his Complaint, which he labels "Discovery," and in which he details the dismissal of additional cases by the circuit judges of Kanawha County and the Supreme Court of Appeals of West Virginia (the "SCAWV") and asserts that these entities are colluding to deny him trials in these matters. (ECF Nos. 8 and 9).

### A. The plaintiff's Complaint contains conclusory allegations that do not give rise to any plausible claim for relief.

As noted above, a Complaint must contain enough facts to support a plausible claim for relief. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. The Complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949.

Although the plaintiff's Complaint lists a number of "unlawful violations," the Complaint documents do not contain sufficient factual allegations to give rise to any plausible claim for relief against a particular defendant. The paucity of factual allegations and the conclusory nature of the proposed legal claims will not place any defendant on notice of particular conduct that would allegedly support a finding of liability against that defendant. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted and is subject to dismissal under Rule 12(b)(6) and the dictates of *Twombly* and *Iqbal*.

### B. Rooker-Feldman Doctrine.

Based upon what little facts can be gleaned from the Complaint documents, it is apparent that the plaintiff is, in large part, asking this court to revisit claims that were previously dismissed by the Circuit Court of Kanawha County and the SCAWV. This court is without jurisdiction to consider such claims under the *Rooker-Feldman* doctrine. The Supreme Court made clear in *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), that "federal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'" *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 196-98 (4th

Cir. 2002) (quoting *Jordahl v. Democratic Party of Va.,* 122 F.3d 192, 202 (4th Cir. 1997)); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) (*Rooker-Feldman* applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court"). More recently, the Supreme Court reiterated that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff is challenging one or more unfavorable state court orders, and that this court's review of those decisions amounts to an appeal therefrom, which is barred by the *Rooker-Feldman* doctrine. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss the plaintiff's Complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine.

### C. Absolute Immunity.

Furthermore, to the extent that the plaintiff's Complaint documents can be construed to be raising any specific factual allegations against the judges named as defendants in his Complaint, those judicial officers are absolutely immune from liability under the doctrine of judicial immunity. Judicial immunity is a firmly rooted principle of law that shields judicial officers from civil suit for actions taken in exercise of their judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099 (1978). The primary policy that supports judicial immunity is also well-established. As early as 1872, the Supreme Court recognized that it is:

> [A] general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.

*Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1872).

The scope of judicial immunity is interpreted broadly. In *Bradley*, the Supreme Court held: "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley*, 13 Wall. at 351.

The only exceptions to absolute judicial immunity are for non-judicial acts, or where the act is done in complete absence of jurisdiction. *Stump*, 435 U.S. at 360; *Bradley*, 13 Wall. at 351. (Id.) Even if the judge acted in error, he or she is still immune. *See Stump*, 435 U.S. at 356. "By the same token, the [Supreme] Court has stated that a judicial act 'does not become less judicial by virtue of an allegation of malice or corruption.'" *Forester v. White*, 484 U.S. 219, 227 (1988).

It is apparent that the conduct of the judges challenged by the plaintiff in the handing and dismissal of his judicial proceedings constituted "judicial functions." Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the judicial officers named in the Complaint (Judge Charnock, Judge Kaufman, Judge Bailey, Judge Webster, Judge Stucky, Judge Bloom, Judge Zakaib and Judge King) are entitled to absolute immunity from suit and, therefore, the plaintiff's claims against them must be dismissed.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 2), in its entirety,


pursuant to 28 U.S.C.§ 1915(e)(2)(B) and remove this civil action from the docket of the court.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff.

January 22, 2018

Dwane L. Tinsley
United States Magistrate Judge